Good morning. May it please the Court, my name is Konstantin Robestov, and I'm representing Carol Burke, the appellant in this case, who has now been battling in this ERISA matter for excess of eight years. I have grown old with her in this matter. I'm going to focus specifically at the Honorable Marilyn Hall Patel's opinion and her findings and demonstrate to you that she committed clear error in this case. In the, she broke the findings down into sections, said findings of fact, the conflict she found, there was substantial conflict in this case, and then she went into the rationale as to whether or not the plan was prejudiced by the absence of the second exam by Dr. Berry. And then she had a section on whether or not the request for a second exam was reasonable, and it seemed like in the two categories she kind of was mixing arguments and it was hard for me to follow what her argument as specifically as to why the plan was prejudiced. But let me just quote what she stated in the opinion. And basically she stated that the plan was prejudiced because it did not have the ability to test the conclusions of Dr. Schwerin because of the absence of the second examination by Dr. Berry. First, this was clear error because there was no evidence supporting that conclusion. Number one, when the plan requested the second examination by Dr. Berry, he did not request it to test the conclusions of Dr. Schwerin. Counsel, help me with this. I, of course, have read the cases, read your brief, read the record, and it seems to me that the trial judge was very clear. She understood perfectly well there's a conflict. All these cases have conflicts. But what was requested here was just garden variety. I mean, I don't understand, frankly, and I'm hoping you can enlighten me why your client didn't go for the second exam. Dr. Schwerin basically said Dr. Berry's conclusions are garbage. They're just ridiculous. So what are they going to do? They need to find out whether, you know, we've got Dr. Berry to take a look at this thing. In addition, the plan separately requires that she submit herself for an examination on this basis. She didn't do it. I do not understand why she did not do it. Can you enlighten me? Does the record indicate? Can you otherwise indicate to us why did not she go back for a second? Okay. You asked me two questions. First of all, I disagree with you that the plan required it. But I'll get to that point after I answer your first question. Okay. You have to understand in the context of ERISA, this is not supposed to be an adversarial relationship. You know, you have to look at the circumstances. From day one, the plan has been battling her. They refused to give her the claim form. She finally retained us. They gave us the claim form. They denied her benefits, saying that you're not entitled to these because you've got workers' comp claim. They finally relented after we sued them, and we settled. And one year of the anniversary of the settlement where they were paying her benefits, they said, we want you to be examined by Dr. Berry under Section 5 of the plan, which is appropriate request. Now, from time to time, that's what the plan calls for. So she went to Dr. Berry. Dr. Berry examined her and says, I think you can return to light duty. Based on an examination, the plan says, well, we're terminating your benefits. You have 180 days to appeal. Now, you have to remember, this woman is not working. I understand. She's disabled. She's got no income. It's not like a regular litigation. This is ERISA. All right? So what we did, we had her examined by Dr. Swerin, who had been a previous treating physician of hers. He examined her. He says, no, she's disabled, and I disagreed with Dr. Berry's findings. In addition, he sent her to an occupational specialist who examined her in a functional capacity evaluation and said, yes, she can't work. She's unemployable. A few weeks before the committee is supposed to meet to decide the issue, they say, hey, we want her to be reexamined by Dr. Berry again. And the reason they gave it, because we think the IME is old. Now they also said that she needed to do that in order to maintain coverage, did they not? They said that's that. No, they said that. Well, this could lead to. Right. She had she had fair warning that unless she went back to talk to Dr. Berry, that she could lose coverage because the plan says she has to submit a reasonable medical examinations from, in quotes, time to time. Your doctor, Dr. Swerin, said, you know what? Dr. Berry said it's just simply not true. OK, that's why isn't it a reasonable thing for the plan under arrest to say, OK, our guy's been challenged here. Before we make our mind up what we're going to do, let's have Dr. Berry take a look at her one more time. And yet she says, even knowing that her rights might be jeopardized, no, I'm not going back. I won't go back. They said, well, we'll pay for you to get there. We'll take care of all the expenses. So no, I'm not going. And I don't understand that. Why? Why didn't she go? Well, you have to understand these these folks are disabled. They're in pain. They get prodded by one doctor. They go through a functional capacity evaluation of several hours. They get their benefits terminated a couple of weeks before the committee is supposed to decide the issue. They say, we want you to go back, be examined again. First of all, I don't think that's a reasonable request to do that within a couple of weeks before the committee before the committee is going to decide our appeal. OK, number one. Number two, it's not authorized under the plan because after the appeal in the appeal process, Article seven of the plan controls and there's nothing in Article seven says during the appeal process they have right to start acting as adversaries and have her reexamined, especially by the same doctor, because Article seven specifically says on appeal they have to have a different medical consultant. And it makes sense because the the appellate process is not for them just to rub a stamp what the disability department found or did. OK, so I don't believe it was reasonable under the circumstances. I don't even think it was authorized by the by the plan. Let me ask you this. Has she applied for or is it in the record she applied for Social Security benefits? She not only applied for Social Security benefits, she received them. She had been receiving them for many, many years. As disabled? As disabled. Is that in the record? Yes. Uh-huh. And that was in the record in front of Judge Patel? Yes. And was that in front of the committee when it made its decision? Yes. But I think, you know, that's on the reasonable part of it, and I don't think it was reasonable and I don't think it was even authorized by the plan. But here, the judge the case was remanded back to Judge Patel where this Court says take another look at this case and, by the way, take a look with all the evidence, because in the initial trial Judge Patel refused to consider certain evidence which the appellate which you this Court found was improper. And take a look to see whether or not the plan suffered any prejudice by the lack of the second exam. And absent such prejudice, whether it would be harmless error or abuse of discretion to deny benefits for such a harmless error. How did you guys get crossways with Judge Patel? I mean, I know it happened from time to time. I'm sorry? How did you guys get crossways with Judge Patel? Well, I'm still trying to figure that out because, you know, it was sort of like focusing on, well, why didn't you go to the second exam? You should have gone to the second exam. It was silly for you not to go to the second exam. Well, obviously, in hindsight, I wish she had gone to the second exam, but that's not the issue here. The issue was, was it reasonable? But more important, when we went back and remanded, was it prejudicial to the plan? And the evidence is clearly it was not. The plan never actual – never even argued actual prejudice. Now, let me ask you a different question, and that is, if it could be determined in a way satisfactory to the plan that she is currently entirely disabled within the definition of the plan, would she be entitled to benefits from this time forward? Well, that's an interesting question, and I really don't know the answer because we're talking about now a passage of almost eight years. I'm sure the plan would say there's some kind of timeless issue and that there were prejudices. I don't know. Well, the reason I ask that is that this is a long-term disability plan, and I'm wondering if someone – you know, it can happen. Back injuries may be a particularly good example of this, that you feel okay for a while, but then because of the work-related automobile accident, if that's the causative agent, the back deteriorates to the point where she really can't work anymore and she is disabled within the definition of the plan, I'm wondering if the plan requires payment of benefits if the disability comes, you know, a little way down the road, whether the plan requires payment of benefits if there's been an interrupted period during which she's all right and then the condition deteriorates again. You just don't know the answer to that question? Well, I know a couple answers. First of all, I don't think that would work because once she became disabled, eventually she became terminated from her employment, and once she was terminated from the employment, then there's no coverage. Okay. Secondarily, this recurring condition has to be within a six-month period and things of that nature. But I like to just – I know my time is up, but I'm a little concerned is that the issue of prejudice has not been raised by the Court, and I didn't have a chance to respond why I think there's no evidence that there was any prejudice at all. Why don't we hear from the other side, but then you can make that prejudice argument in response. Thank you. Okay. May it please the Court, Nicole Diller on behalf of Kittney Bowes Long-Term Disability Plan. The sole issue before this Court is whether the denial of the benefits based on the participant's refusal to participate in an IME or independent medical exam requested by the plan administrator and required by the terms of the plan was an abuse of discretion. Why is that the sole issue? I don't read Judge Patel's opinion as resting solely upon the failure to – I mean, clearly it's relevant, but I don't review her decision of resting solely on the refusal to show up for that second examination. The party stipulated on remand to limit the issue to the independent medical examination issue, and the summary judgment papers in the order relate to the reasonableness of the independent medical examination and the reasonableness of the committee's decision to terminate benefits based on that examination. Yeah, but that's broader than just the question as to whether or not she showed up. As I view it, it is not she didn't show up and therefore she loses. It's she didn't show up and therefore what's the case look like after she didn't show up? True enough. Okay. In Abatey v. Alta Health and Life Insurance, the Ninth Circuit held that when an administrator can show that it engaged in an ongoing good-faith dialogue between the claimant and the plan administrator, that the court should give the administrator's decision broad deference. Here, the record shows that there was an ongoing good-faith dialogue about this independent medical examination and the plaintiff's – Yes, that is true, and that was before the committee and the administrator. They knew that? Yes, they were aware of that. And is it also true that the standard for disability under Social Security requires greater disability than the plan requires? Well, not exactly, because the standard for disability under the Social Security Administration incorporates the treating physician rule, which Nord v. Black and Decker – No, no, I'm not asking for the evidentiary questions. I'm asking for the level of disability. The definition of disability itself is greater than what the plan requires. No gainful employment under the Social Security definition? That's correct. At the time – She is disabled only if she can't earn 60% or more. Exactly. But I would point out – So the committee says, you know, Social Security Administration is just wrong. I think what the committee decided was that the treating physician was not as credible as other physicians in the record, including the independent medical examiner, Dr. Berry. And so that would be the basis for deciding that the Social Security Administration got it wrong, because the Social Security Administration was bound to adhere to the treating physician's opinion, which the committee determined unreliable. Well, we do an awful lot of Social Security cases, so I know the treating physician rule. The Social Security Administration is not bound to accept the treating physician opinion. It can reject it, although there's a presumption in favor of it. That's more accurately said. I thought Zerwan was the treating physician. That was her physician, right? Yes. So he's the treating physician, not Dr. Berry. That's correct. Dr. Berry was the independent medical examiner. If anything, I realize it's a different rule. But if we were looking at this from a Social Security perspective, Dr. Zerwan's information would carry great weight, and there would have to be really substantial evidence from Dr. Berry to overcome Dr. Zerwan's testimony. Would there not? That would be under the Social Security regime. I appreciate that. I guess I share Judge Fletcher's concern. Given the fact that there is an inherent conflict of interest in these cases, a fiduciary duty, if you will, and I appreciate the fact that there was notice that she should have gone to the second, I guess counsels even conceded in retrospect they probably should have had her go. But just looking at the bottom line of this thing, how do you find this woman can go work when she's totally disabled in Social Security? Social Security is so tough to get disability. You conceded that the plan definition is not as tough as Social Security, and yet she has Social Security. How does that work? How do we factor that in when we look at the conflict of the interest in these cases? Well, I think there's two responses to that. One is, as I said, the treating physician rule distinguishes the plan's regime. Secondly, I think you're right. It's a factor, if anything, to be considered. And we need to be mindful that under both Abatey and Glenn v. MetLife, the conflict of interest and any evidence that that conflict might have impacted the decision is only to be a factor but isn't to modify the abuse of discretion standard of review.  Now, there's a particularly good opinion recently written by Judge Clifton. We're fairly familiar with the conflict standard. Yes, the Concrete case. What's your position concerning the appellant's argument that once this matter gets on appeal, a second evaluation is not even permitted? I think he's made two arguments. One is that it's not permitted, and the second is that it's not permitted by the same physician. The claim regulations clearly contemplate that a consultation with an independent medical examiner is to be permitted. The Department of Labor, in guidance issued in the form of FAQs, stated that the consultation requirement is not intended to constrain the fiduciary from consulting with any other experts. The fiduciary considers appropriate under the circumstances. That's at Q&A D-8 of the Department of Labor Claim Regulation Frequently Asked Questions. And so it's clear that the Department of Labor's position on this is that you can indeed consult with another physician. Now, the question is, can it be the same physician as the independent medical examiner used, employed earlier? And here I think Ms. Burke erroneously construes the way that the plan structure reviewed this. There was a physician consultant that was used at the first phase. If you take a look at the initial denial letter of Burke's claim, which is at excerpts of the Record 97, that letter states that the decision to terminate benefits was based upon a review by Pitney Bowe's physician consultant, Peter Griffin, based on medical information received from Ms. Burke's treating physician and Dr. Berry. And then if you look at the minutes of the committee meeting, which are at excerpts of the Record 80, they show that Dr. Griffin was not present at that meeting at which the committee reviewed plaintiff's claim, and instead Dr. Jack Mahoney, the company's medical director, responded to questions from the committee concerning Ms. Burke's condition. So really plaintiff is conflating the concept of an independent medical examiner with a physician consultant. And the physician consultants employed by the plan were indeed different at the two phases. And I would note that the claim regulations don't even require an independent medical examination be undertaken, and so they clearly don't require that you have different medical examiners. Let me ask, because the time is running, let me ask the question of prejudice. After she does not go to the second examination by Dr. Berry, whether that was a good or a bad decision, I'll leave off to one side for the moment, Dr. Berry nonetheless looks at the records, and Dr. Berry says, I was right the first time. Realistically, I'd be astounded if she had gone back to Dr. Berry in person, that Dr. Berry would have said anything different. I think that depends. Hang on. I'm sorry. And if that's so, where is the prejudice to the plan? Part of the prejudice is right here in that we don't know what would have happened. It's speculation. The thing that could have happened that would have helped you is that he would have said, well, I've seen her in the flesh, and I'm still right. Instead of I've seen the records and all these results of the test, I read the test, and they're fairly accurately described and so on. He says, I stick to my original opinion. Or he could have said, you know, I'll change my mind. Of course, at that point, you guys have to pay the benefits. So the only possible prejudice to you is that the committee would have had a slightly stronger opinion from Dr. Berry because he saw her in the flesh the second time around. But the second time around, he looks at the records relied upon by the people who disagree with him and says, no, I still stick to my original opinion. So I'm having trouble seeing any very realistic prejudice to you at the time the committee is making its decision. Well, I respectfully disagree because if Dr. Berry had found her to be disabled, then the committee's role is as a fiduciary to grant meritorious claims and to deny unmeritorious claims. And anything that helps it in that process, gather the information requisite to make that decision, whether it's for the claim or against the claim. I read that. That's a very peculiar definition of prejudice. The company's going to be prejudiced because they pay money? Yeah, right. But the company is duty-bound to administer this plan according to its terms. Absolutely, they are. But that's not the ordinary definition of prejudice. But certainly if there had been an examination that would have helped Ms. Burke, that would have changed the mix of evidence in front of the committee and would have completely changed the results here. Yes, it would have. That's right. I understand that. I have one final quick question, if PJ will let me ask this. Is Dr. Berry a regular physician consultant for the plan? No, he's not. Has he ever been used before by the plan? Not to my knowledge. Okay. Now, how extensive is your knowledge? I've represented this plan for the past eight years. And do you know who is the independent medical examiner in these cases all the time? Through the cases that go to litigation and through the claims processes that I'm involved in, I do have knowledge, and I've never seen Dr. Berry involved in any case other than this one. Okay. Thank you. Thank you. Response? Thank you. I think the first thing we have to look at and not get sidetracked is Judge Patel found that the plan had abused its discretion in determining that Ms. Burke did not meet the definition of disability under the plan. She found that. They've never challenged that. So what we're talking about is this procedural issue, which I consider was totally harmless, error, and was unprejudicial. And I'll just give you three points, quick ones, on the lack of prejudice. The plan admitted that Ms. Burke's condition had not changed since Dr. Berry had examined her the first time. And this is at ER 326. Dr. Berry said he stood by his ---- Hang on a second. I want to see that. Page 326? Yes. This is ER 326, and it's in my opening brief at page 17. Okay. I'm now on page 326. Where do I look? Let me get to that page. If you look down, 1, 2, 3, 4, 5, 6, 7, 8, the ninth paragraph, which is in bold, says, certainly, quote, Okay. I'm sorry. Last sentence, last paragraph. Ms. Burke has not reported nor been involved in any recent new incident that will alter the findings of her digital video FCE or examinations by Drs. Zwering or Berry. Okay. And who is Dr. Broder, and who is Barbara Bianco? Dr. Broder was the physician consultant from the plant, and Dr. Broder was the one that set up the initial examination by Dr. Berry. He's an employee of the plant. And who's Barbara Bianco? Barbara Bianco was, you know, I forget who Barbara Bianco was, but I believe she was one of the persons who administrated the claim and made a decision to deny the or to terminate the benefits in the first instance. So this is an internal email inside the plant? Yes. And this internal is saying, Ms. Burke has not reported nor been involved in any recent new incident that would alter the findings of her digital video FCE or examinations by Drs. Zwering or Berry. As I parse that sentence carefully, it doesn't say that she is the same. It says she's not been involved in any recent incidents that would change things. I take that to mean no new automobile accidents, no falls, no bowling, no whatever. So I don't take that as a flat statement. There has been no change in her condition. Well, it says no change that would affect any of the conclusions reached by Dr. Berry or Dr. Zwering. No, no, I don't read it to say that way. She has not been reported nor been involved in any new recent incident that would alter. Now, incident is that that doesn't mean it never happened. Incident has a slightly narrower meaning than existing in the universe. So I take your point. This helps you. But I don't take it as a flat statement that we conclude that there has been no change. OK. That's one. The other point is where Barry, Dr. Berry said he stood by his report of October 2003, which is contained in ER excerpts of record 680. And the other point is that Judge Patel found, and there's been no challenge to Judge Patel's finding that Dr. Berry was unqualified to speak to the ultimate issue of whether Ms. Burke was capable of earning 60 percent of her predisability income. So the question is. Where is that in the record? That's excerpts of record 690. And that's actually contained also in page 18 of Judge Patel's opinion. And that is actually quoting from Judge Patel's opinion at page 18, which is excerpts of record 690. So where are you? I'm on page 690. And if you look at page 18, which is excerpt of 690, lines 20, as Burke notes, Barry was unqualified to speak to the ultimate question of whether Burke was capable of earning 60 percent of her predisability income. And that was the basis of Judge Patel's initial finding in the first trial, as to why the plan abuses discretion in determining that Ms. Burke did not meet the definition of predisability. Yeah. But this goes on to say, yet Burke is incorrect that the request for a second IMU was unreasonable because an examination by Berry would have been irrelevant. The ultimate question really is, okay, is she disabled?  And that's clearly within the purview of Judge Patel. Well, the question is whether or not the degree of disability impacts her ability to earn income. That's somebody else's determination. But that doesn't mean his evaluation is irrelevant to the determination that the committee has to make. Well, I tell you why it doesn't. There's a letter also from Pitney Bowe's counsel to me where it said, and I can find it for the Court, but I don't have it at my fingertips, where they said, look, regardless of whether she is found to be able to do light duty, sedentary duty, or otherwise, she's only not entitled to disability benefits if she cannot earn at least 60 percent of her predisability earnings. So that goes to the fact that whatever Dr. Berry found in the second exam, it has no impact on the second one. Well, of course it has a lot of impact. If Dr. Berry were to conclude and we were to believe, she can run, jump, and skip like a six-year-old. Duh. Let me ask you this. I read Judge Patel's order, the one that we were just looking at. It's not written in the way that she ordinarily writes these. That is to say, it's written with numbered paragraphs, starts out with finding the fact, then goes to conclusions of law. Was this submitted by one of the parties for her? Not to my – it wasn't submitted by my office, and I don't believe it was submitted by her. Okay. If there are any questions, I'd love to answer them. Okay. Thank you very much. Thank you both, Secretary. The case of Burke v. Pitney Bowes is now submitted for decision. That completes our argument calendar for this morning. Thank you very much, and we're in adjournment. Thank you very much.
judges: Todd, Fletcher W. , Smith M.